IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **VICTOR BLYTHE, JR.,**<br><br>Petitioner,<br><br>v.<br><br>**WARDEN JEFFREY NINES, AND THE ATTORNEY GENERAL OF THE STATE OF MARYLAND,**<br><br>Respondents. | Civil Action No.: **PJM-21-417** |

## MEMORANDUM OPINION

Petitioner, Victor Blythe, Jr., has filed a counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Respondents assert that the Petition should be dismissed because it is untimely. ECF No. 7. On May 3, 2023 (ECF No. 9), the Court ordered Blythe to file a response to Respondents' untimeliness argument, but Blythe failed to respond. The Court then issued a Show Cause Order setting a hearing for August 23, 2023. ECF No. 10. The day before the Show Cause hearing, Blythe's counsel, who had apparently lost touch with the case, filed a memorandum requesting that the Court equitably toll the statute of limitations and/or apply the actual innocence exception. ECF No. 11.

The show cause hearing was held on August 23, 2023. ECF No. 12. At the hearing Respondents argued that the petition was filed twelve days too late, that equitable tolling was unavailable, and that Blythe had not offered any new evidence required for the actual innocence exception to apply. As for the timeframe of the filing, Counsel for Blythe could not recall exactly what occurred, but did recall making some attempt to file the petition on the deadline and possibly doing so erroneously. The Court found the petition timely filed as of 2/19/2021 and invoked

equitable tolling based on an internal note on the Court's docket sheet that reads, "(Court only) \*\*\*Staff notes: SA and GB notified of filing. Counsel originally opened case on 2/19/2021 as a shell but did not file any documents. The Clerk's office apparently contacted Blythe's counsel numerous times about completing the case file and a more complete petition was finally filed on 3/2/2021 after counsel was told the case would be deleted from the system if it were not completed. (krs, Deputy Clerk) (Entered: 03/03/2021)." Although the Court at the show-cause hearing determined that the petition was timely, Respondents asked the Court for time to submit additional briefing as to the Court's ruling, which was granted. The Court has now reviewed Respondents' brief and reaffirms that the petition is deemed timely for the reasons stated at the August 23, 2023 hearing. The Court thus reviews Blythe's claims on the merits.

After review of the pleadings, the Court deems a hearing on the merits of Blythe's claims in this matter unnecessary. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2023); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). The Petition is **DENIED**, and a certificate of appealability will not issue.

## BACKGROUND

In 1996, Blythe was charged in the Circuit Court for Harford County in connection with the murders of Dwight Nelson and Marlene Ellis. ECF No. 13-1 at 14, 80. On August 15, 1997, a jury found Blythe guilty of two counts of first-degree murder, two counts of felony murder, two counts of conspiracy to commit murder, two counts of armed robbery, and two counts of kidnapping. *Id.* at 21, 33-35. On October 21, 1997, Blythe was sentenced to two consecutive life sentences plus two consecutive thirty-year sentences. *Id.* at 11-14. On October 31, 1997, Blythe

filed a motion for a three-judge panel review, which, on March 19, 1998, upheld the sentences. *Id.* at 41. On October 27, 1997, Blythe filed a motion for modification of his sentence. *Id.* at 39-40.

On direct appeal, the Appellate Court of Maryland[1] affirmed Blythe's convictions and sentence. ECF No. 13-1 at 79-84. The Appellate Court of Maryland described the facts as follows:

> Early on 8 February 1996, the bodies of Dwight "Blips" Nelson (Blips) and Marlene "Honey" Ellis (Marlene) were discovered. Both had been bound at the wrists and had suffered gunshot wounds to the head. Bullets from a .32 caliber handgun and a .380 handgun were found nearby.
>
> Nefiteria "Nikki" Jamison (Nikki) testified that on 7 February 1996 she was in Herbert Johnson's apartment at 3016 Reisterstown Road with Michelle Blythe (Michelle), Ikonen "Iko" Campbell (Iko), and [Blythe]. She said that Blips had arrived at the apartment at about midnight to pick up some money. While Blips was talking with Michelle, Iko obtained a shotgun from a closet and Blythe a handgun. Blips was then taken into the living room where he was beaten by [Blythe] and Iko, and his wrists were bound with a vacuum cleaner cord. Michelle learned that Marlene had driven Blips to the apartment and was waiting for Blips outside in her car. Nikki, later joined by Michelle, went out to Marlene's car and told Marlene that Blips wanted her to come in. When the three of them returned to the apartment, Iko struck Marlene and [Blythe] bound her wrists. Iko, Michelle, and [Blythe] left Johnson's apartment with Blips and Marlene.
>
> At trial, Nikki testified that although she did not know where Iko, Michelle, [Blythe], Blips, and Marlene were going, she saw Iko, Michelle, and [Blythe] again at about 3:00 a.m., when they returned to the apartment. All four of them drove into Baltimore City in Marlene's car, parked the car, and "wiped down" its interior. Michelle threw Blips' wallet into the sewer and [Blythe] threw Blips' watch onto the roof of a nearby building. The watch was later recovered by the police. Nikki also testified that she saw [Blythe] with a ring Marlene had been wearing. She said [Blythe] told her he intended to take the ring to New York as a present for Diane Caleb, his present girlfriend.
>
> The group spent that night at a Days Inn on Baltimore National Pike. The next evening, they stayed in the Best Western Hotel at the Baltimore Travel Plaza, where they were joined by James "Blacks" Trusty (Blacks) and a man called "Lando." According to Nikki, [Blythe] placed a shotgun and two handguns, one a

---

[1] At the time Blythe's case was litigated in the Maryland state courts, the Appellate Court of Maryland was named the "Court of Special Appeals" and the Supreme Court of Maryland was named the "Court of Appeals of Maryland." At the November 8, 2022, general election, the voters of Maryland ratified a constitutional amendment changing the name of both courts. The Court of Special Appeals is now known as the Appellate Court of Maryland. The name change took effect on December 14, 2022.

> .380 caliber under a dresser in the room. The next morning, the group left for New York on a Peter Pan bus.
>
> Blacks testified that [Blythe] told him (Blacks) that he [Blythe] "did" Blips and Marlene and described to Blacks how he took Blips into the woods and shot him in the presence of Michelle and Iko. [Blythe] also said he had taken a ring worn by Marlene to take to New York and give to Ms. Caleb. Blacks testified that he later saw Ms. Caleb wearing the ring.
>
> Blacks also identified a handgun found in an alley in the 300 block of Cathedral Street as the one he had seen [Blythe] holding on 9 February 1996 at Michelle's Cathedral Street apartment.

*Id.* at 80-82. Blythe sought a writ of certiorari with the Supreme Court of Maryland (*id.* at 85-91), which was denied on December 23, 1998. *Id.* at 93.

On October 19, 2007, Blythe filed a petition for post-conviction relief in the Circuit Court for Hartford County. *Id.* at 94-108. Blythe alleged, *inter alia*, that his counsel was ineffective for failing to file a motion to suppress his statement to the police and for failing to request that the jury be polled. *Id.* at 105. On October 28, 2009, the post-conviction court issued an opinion denying Blythe's petition. *Id.* at 120-134. Blythe sought leave to appeal the order with the Appellate Court of Maryland (*id.* at 135-137), which was denied on March 24, 2011. His subsequent petition for a writ of certiorari to the Maryland Supreme Court was denied on July 11, 2011. *Id.* at 149.

On April 15, 2019, Blythe requested a hearing on his October 27, 1997, motion for modification of sentence.[2] *Id.* at 150-152. At a hearing on February 19, 2020, the Circuit Court denied the motion. *Id.* at 31.

Blythe's federal habeas corpus petition, pursuant to 28 U.S.C. § 2254, seeks relief based on two claims of ineffective assistance of counsel. Specifically, Blythe claims that his trial counsel

---

[2] A five-year limit on the court's authority to modify a sentence was added to Rule 4-345 effective July 1, 2004. *See Tasker v. Maryland*, No. AW 11-CV-1869, 2013 WL 425040, at *3 (D. Md. Jan. 31, 2013), *aff'd*, 517 F. App'x 172 (4th Cir. 2013), and *abrogated by Mitchell v. Green*, 922 F.3d 187 (4th Cir. 2019).

4

was ineffective: (1) for failing to litigate a motion to suppress Blythe's statement to the police, and (2) for failing to poll the jury after the verdict was read. ECF No. 1.

## STANDARD OF REVIEW

### A. 28 U.S.C § 2254

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S. 415, 419-20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2)

5

"confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010).

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 137 S.Ct. 759, 775 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687-88. *See Williams*, 529 U.S. at 390. First, the petitioner must show that

counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775.

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see Harrington*, 562 U.S. at 104. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court recently reiterated that the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. Judicial scrutiny of counsel's performance must be "'highly deferential'" and not based on hindsight. *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Id.* at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696. Thus, "[a]

fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

## ANALYSIS

Blythe first contends that his counsel was ineffective for failing to litigate a motion to suppress his statement to police, "I haven't been to Baltimore. I just want to go to court." But the record reflects that Blythe's trial counsel, did, in fact file a motion to suppress this statement and a hearing was held on April 22, 1997. ECF No. 13-3. During the hearing, Detective Richard Lyne testified that he interviewed Blythe after his arrest in Manhattan. *Id.* at 66. Detective Lyne testified that he gave Blythe the Miranda warning (*id.* at 67) and identified the form that was used and signed by Blythe (*id.* at 68-71). Detective Lyne testified that Blythe agreed to speak to him without an attorney. *Id.* at 69. Detective Lyne also testified that Blythe was given the Miranda warning at

8

11:48 p.m. and at 12:05 a.m. he made the statement, "I haven't been to Baltimore, I just want to go to court." *Id.* at 72.[3]

Detective Lyne testified again at Blythe's trial on August 7, 1997. ECF No. 13-9. During his testimony, Blythe's trial counsel lodged an objection that was heard at the bench. *Id.* at 118-120. Trial counsel objected on the *mistaken* belief that Detective Lyne was going to testify to a pre-Miranda statement made by Blythe of which counsel was previously unaware. *Id.* The prosecuting attorney assured Blythe's trial counsel that the statement at issue was the post-Miranda statement, "I haven't been to Baltimore, I just want to go to court." Once assured that was the only statement Detective Lyne intended to testify about, Blythe's trial counsel withdrew his objection. *Id.* at 120.

Blythe raised his present claim of ineffective assistance in his post-conviction petition at the state level. ECF No. 13-1 at 105. The post-conviction court denied the claim, finding that trial counsel had challenged the statement by a motion to suppress, then withdrew his mid-trial objection to Detective Lyne's testimony once he realized that he had received pretrial notice of the statement and the advice of rights form, and that any appeal of the issue would have failed. *Id.* at 128.

In sum, the record reflects that Blythe's counsel's performance did not fall below an objective standard of reasonableness because he did, in fact, challenge Blythe's statement to the police. Detective Lyne's uncontroverted testimony established that Blythe voluntarily agreed to speak to the police and the statement at issue was given to the police after he was provided with the Miranda warning.

---

[3] The record provided by the State does not include any notation or transcription of the trial court's ruling on Blythe's pretrial motion to suppress. Considering the subsequent testimony at trial by Detective Lyne, it can be fairly surmised that the trial court denied the motion.

9

Blythe argues that he was prejudiced on appeal because his counsel withdrew his objection to the statement at trial. He says that the State's brief on appeal referenced the statement as evidence against his sufficiency of evidence argument. However, the Appellate Court of Maryland did not even mention Blythe's statement to the police in its opinion on direct appeal and instead listed other evidence as sufficient corroboration of the co-conspirator's testimony to support the conviction. ECF No. 13-1 at 79-84.

Blythe has not established and cannot establish that his trial counsel's performance was deficient or that the alleged deficiencies resulted in prejudice. Accordingly, the post-conviction court's dismissal of this claim was neither contrary to nor an unreasonable application of federal law. Blythe is not entitled to relief on this claim in this Court.

Next, Blythe contends that counsel was ineffective for failing to poll the jury after the verdict was read. The record reflects that the verdict was rendered on August 15, 1997. ECF No. 13-14. The transcript reflects that the judge asked the jurors if they agreed on the verdict, and the response was, "yes." *Id.* at 11-12. The foreman then proceeded to read the guilty verdicts aloud. *Id.* at 12-13. The trial judge then restated the guilty verdicts and asked the jurors if anyone disagreed, to which no juror responded. *Id.* at 13-14. Blythe's trial counsel declined to poll the jury. *Id.* at 14.

Blythe raised the failure-to-poll claim in his post-conviction petition. ECF No. 13-1 at 105. The post-conviction court denied the claim, finding that the trial judge's hearkening of the verdict removed all doubt that the verdicts were unanimous, and that Blythe had failed to show how the result would have been any different if the jury had been polled. *Id.* at 130.

The Court concludes that Blythe is not entitled to relief in this Court on his claim that trial counsel was ineffective for failing to poll the jury. These grounds are simply not cognizable in the

context of federal habeas corpus review. *See United States v. Carter*, 772 F.2d 66, 67 (4th Cir. 1985) (finding that the polling of the jury is not of constitutional dimension). *See also Taylor v. Maryland*, No. CV GLR-13-371, 2020 WL 6384291, at *18 (D. Md. Oct. 30, 2020).

## ACTUAL INNOCENCE

In his response to the Respondents' timeliness defense, Blythe made a claim that he is "actually innocent." ECF No. 11. To the extent Blythe asserts a freestanding constitutional claim of actual innocence, this type of claim has not been recognized by the United States Supreme Court as cognizable in habeas corpus proceedings. Alternatively, assuming relief is available, Blythe fails to meet the stringent requirements that would be applicable to a freestanding actual innocence claim.

A federal habeas petitioner may assert a claim of actual innocence to overcome a procedural bar to review, *Schlup v. Delo*, 513 U.S. 298, 326 (1995), or to overcome the Antiterrorism and Effective Death Penalty Act's one-year statute of limitations ("gateway actual innocence"). *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). The Supreme Court has not resolved whether a non-capital prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence. *McQuiggin*, 569 U.S. 392. *See also House v. Bell*, 547 U.S. 518, 554-55 (2006) (noting that *Herrera v. Collins*, 506 U.S. 390 (2006), left open the possibility of a freestanding claim, but that the threshold showing for such a hypothetical claim would be "extraordinarily high").

The Fourth Circuit has observed that the standard for a freestanding actual innocence claim has yet to be determined by the United States Supreme Court but would be more stringent than the standard articulated by *Schlup v. Delo*, 513 U.S. 298 (1995), with respect to gateway actual innocence claims. *See Teleguz v. Pearson*, 689 F.3d 322, 328 (4th Cir. 2012). In order to present

a credible gateway claim of actual innocence under *Schlup*, petitioners must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup* 513 U.S at 324. "A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror acting reasonably would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329.

Blythe has not come close to demonstrating that he meets the extraordinarily high threshold showing for a hypothetical freestanding claim of actual innocence. His filings in this matter identify no new evidence. Furthermore, when asked about the claim at the August 23, 2023, hearing on this matter, Blythe's counsel could not identify any new evidence that would support a claim of actual innocence. Blythe's simple declaration of innocence, without the least evidentiary support, falls far short of the stringent standard required for a showing of actual innocence.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed.

A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Blythe has not made the requisite showing. Accordingly, the Court declines to issue a certificate of appealability. Blythe may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

## CONCLUSION

For the foregoing reasons, the Court will **DENY** Blythe's Petition for Writ of Habeas Corpus and decline to issue a Certificate of Appealability. A separate Order follows.

9/26/23

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE